IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



LISA L. LOUISON,

v.

BANK OF AMERICA, N.A.,
SERVE: CT Corporation System, Registered Agent
    4701 Cox Road, Suite 301
    Glen Allen, VA 23060

and

EXPERIAN INFORMATION SOLUTIONS, INC.,
SERVE: David N. Anthony, Registered Agent
    1001 Haxall Point
    Richmond, VA 23219

and

TRANS UNION, LLC.,
SERVE: Corporation Service Company, Registered Agent
    11 S. 12th Street
    Richmond, VA 23218

and

EQUIFAX INFORMATION SERVICES, LLC.,
SERVE: Corporation Service Company, Registered Agent
    11 S. 12th Street
    Richmond, VA 23218

1:12 cv 1107 LMB/TCB

## COMPLAINT

Plaintiff, LISA L. LOUISON (hereafter "Plaintiff" or "Ms. Louison"), by counsel, and for her Complaint against Defendants, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to 15 U.S.C. §§ 1681 *et seq.* (Federal Fair Credit Reporting Act or "FCRA").

## JURISDICTION

2. The jurisdiction of this Court is conferred by the FRCA, 15 U.S.C. § 1681(p) and 28 U.S.C. §1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as all of the Defendants maintain registered offices within the boundaries of the Eastern District of Virginia, Plaintiff resides in this District and Division and significant part of the Plaintiff's claims occurred in Virginia.

## PARTIES

4. The Plaintiff, LISA L. LOUISON ("Plaintiff"), is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

5. Upon information and belief, **BANK OF AMERICA, N.A.,** *d/b/a BAC HOME LOAN SERVICING, LP ("Bank of America")* is a foreign limited liability company doing business as a mortgage originator and servicer. At all relevant times hereto, *Bank of America* was a furnisher as governed by the FRCA.

6. Upon information and belief, **EXPERIAN INFORMATION SOLUTIONS, INC.** (*"Experian"*), is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

7. Upon information and belief, *Experian* is a "consumer reporting agency," as defined by 15 U.S.C. § 1681(f). Upon information and belief, *Experian* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

8. Upon information and belief, *Experian* disburses such consumer reports to third parties under contract for monetary compensation.

9. Upon information and belief, **TRANS UNION, LLC.** ("*Trans Union*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

10. Upon information and belief, *Trans Union* is a "consumer reporting agency," as defined in 15 U.S.C. §1681(f). Upon information and belief, *Trans Union* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

11. Upon information and belief, *Trans Union* disburses such consumer reports to third parties under contract for monetary compensation.

12. Upon information and belief, **EQUIFAX INFORMATION SYSTEMS, LLC.** ("*Equifax*") is a corporation authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

13. Upon information and belief, *Equifax* is a "consumer reporting agency," as defined in 15 U.S.C. §1681(f). Upon information and belief, *Equifax* is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

14. Upon information and belief, *Equifax* disburses such consumer reports to third parties under contract for monetary compensation.

## FACTS

15. On or around May 2012, Plaintiff obtained a copy of her credit report with *Experian*, *Equifax* and *Trans Union* and learned that each credit bureau was reporting a mortgage delinquency that did not exist.

16. Specifically, Plaintiff's credit files indicated that she was delinquent on her mortgage loan with *Bank of America* since November 2010.

17. This credit reporting was inaccurate because Plaintiff had made timely payments on her mortgage loan from November 2010 through February 2012, when *Bank of America* began rejecting Plaintiff's payments. Moreover, Plaintiff has continued to make her monthly payments on her mortgage loan even though *Bank of America* has returned every payment since February 2012.

18. On or around May 10, 2012, Plaintiff forwarded written dispute letters to *Experian*, *Equifax* and *Trans Union* regarding the inaccurate mortgage account reporting with her credit reports. This letter disputed the legitimacy of the information on her credit report, which improperly reflected that she was past due in paying *Bank of America* since November 2010.

19. In this letter, Ms. Louison explained that she had timely paid all of her mortgage obligation to *Bank of America*. Ms. Louison also explained that the terms of her loan only required her to pay *Bank of America* principal and interest in the amount of $1,899.41, and that she pays her taxes and insurance on her own.

20. In addition, Plaintiff enclosed proof of her mortgage payments from November 2010 through May 2012, including payments returned by *Bank of America* from February 2012 through May 2012. Plaintiff also enclosed proof of payment of her property tax payments and proof of her homeowners' insurance payments, which she paid directly to Prince William County and Travelers Insurance Company in accordance with the terms of her loan.

21. On or around May 22, 2012, *Experian* responded to Plaintiff's dispute with the result of its investigation. In this letter, *Experian* stated that its investigation determined that Plaintiff was delinquent in her mortgage payments in the amount of $15,819. *Experian's* response further stated that foreclosure proceedings had commenced.

22. On or around May 23, 2012, *Equifax* responded to Plaintiff's dispute with the result of its investigation. In this letter, *Equifax* stated that its investigation resulted in a determination that the current status of Plaintiff's mortgage was being reported correctly. This correspondence further stated that Plaintiff was past due in the amount of $15,819 and foreclosure proceedings had commenced.

23. On or around May 23, 2012, *Trans Union* responded to Plaintiff's dispute with the result of its investigation. In this letter, *Trans Union* stated its investigated Plaintiff's dispute and "verified" that she was delinquent on her mortgage obligations in the amount of $15,819 and foreclosure proceeding had been initiated.

24. On or around June 7, 2012, Plaintiff separately forwarded follow-up written dispute letters to *Experian, Trans Union*, and *Equifax* regarding the erroneous results of their investigations into the inaccurate mortgage account reporting within her credit

reports. In her follow-up dispute letters, Plaintiff enclosed a copy of her May 10, 2012 letter and the proof of payments, taxes, and insurance previously provided to *Experian*, *Trans Union*, and *Equifax*.

25. On or around June 14, 2012, *Equifax* responded to Ms. Louison's follow-up dispute letter with the results of its reinvestigation. In this letter, *Equifax* stated that its investigation "verified" that Ms. Louison's *Bank of America* account was delinquent in the amount of $15,819.

26. On or around June 21, 2012, *Trans Union* responded to Ms. Louison's follow-up dispute letter with the results of its reinvestigation. In this letter, *Tran Union* stated that its investigation "verified" that Ms. Louison's *Bank of America* account was delinquent in the amount of $18,114.

27. Defendants had actual knowledge of these inaccuracies and deliberately chose to ignore and permit reporting of the inaccurate account.

28. Upon information and belief, *Experian, Equifax and Trans Union* prepared and published to third parties multiple inaccurate consumer reports about Ms. Louison which contained inaccurate derogatory information regarding his *Bank of America* account.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### (EXPERIAN, TRANS UNION and EQUIFAX)

29. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

30. *Experian*, *Trans Union*, and *Equifax* each violated 15 U.S.C. §1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible

accuracy in the preparation of the Plaintiff's credit reports and credit files it published and maintained concerning the Plaintiff.

31. As a result of *Experian's*, *Trans Union's*, and *Equifax's* violations of 15 U.S.C. §1681e(b), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

32. The violations by *Experian*, *Trans Union*, and *Equifax* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Experian*, *Trans Union*, and *Equifax* were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

33. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian*, *Trans Union*, and *Equifax* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT TWO: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(1)
### (EXPERIAN, TRANS UNION and EQUIFAX)

34. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

35. *Experian*, *Trans Union*, and *Equifax* each violated 15 U.S.C. §1681i(a)(1) on multiple occasions by failing to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information or delete the item from the Ms. Louison's credit files.

36. As a result of *Experian's, Trans Union's*, and *Equifax's* violations of 15 U.S.C. §1681i(a)(1), the Ms. Lousion suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

37. The violations by *Experian, Trans Union*, and *Equifax* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Experian, Trans Union*, and *Equifax* were negligent, which entitles the Ms. Lousion to recovery under 15 U.S.C. §1681o.

38. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian, Trans Union*, and *Equifax* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT THREE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(2)(A)
### (EXPERIAN, TRANS UNION and EQUIFAX)

39. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

40. *Experian, Trans Union*, and *Equifax* each violated 15 U.S.C. §1681i(a)(2)(A) on multiple occasions by failing to provide *Bank of America* with all the relevant information regarding the Plaintiff's dispute.

41. As a result of *Experian's, Trans Union's*, and *Equifax's* violations of 15 U.S.C. §1681i(a)(2), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

42. The violations by *Experian*, *Trans Union*, and *Equifax* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Experian*, *Trans Union*, and *Equifax* were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

43. Ms. Louison is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian*, *Trans Union*, and *Equifax* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT FOUR: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a)(4)
### (EXPERIAN, TRANS UNION and EQUIFAX)

44. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

45. *Experian*, *Trans Union*, and *Equifax* each violated 15 U.S.C. §1681i(a)(4) on multiple occasions by failing to review and consider all relevant information submitted by the Plaintiff.

46. As a result of *Experian's*, *Trans Union's*, and *Equifax's* violations of 15 U.S.C. §1681i(a)(4), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

47. The violations by *Experian*, *Trans Union*, and *Equifax* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative,

*Experian*, *Trans Union*, and *Equifax* were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

48. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian*, *Trans Union*, and *Equifax* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

## COUNT FIVE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i(a)(5)(A)
## (EXPERIAN, TRANS UNION and EQUIFAX)

49. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

50. *Experian*, *Trans Union*, and *Equifax* each violated 15 U.S.C. §1681i(a)(5)(A) on multiple occasions by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

51. As a result of *Experian's*, *Trans Union's*, and *Equifax's* violations of 15 U.S.C. §1681i(a)(5)(A), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

52. The violations by *Experian*, *Trans Union*, and *Equifax* were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Experian*, *Trans Union*, and *Equifax* were negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

53. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Experian*, *Trans Union*, and *Equifax* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT SIX: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(A)
### (BANK OF AMERICA)

54. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

55. On one or more occasions within the past two years, by example only and without limitation, *Bank of America* violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate the Plaintiff's disputes.

56. When the Plaintiff mailed her disputes to the consumer reporting agencies ("CRAs"), they use a dispute system named, "e-Oscar", which has been adopted by the credit reporting agencies and by their furnisher-customers such as *Bank of America*. It is an automated system and the procedures used by the CRAs are systemic and uniform.

57. When a CRA receives a consumer dispute, it (usually *via* an Indian outsource vendor), translates that dispute into an "ACDV" form.

58. The ACDV form is the method by which *Bank of America* has elected to receive consumer disputes pursuant to 15 U.S.C. § 1681i(a).

59. It is extremely rare – certainly less than 1% of the time – that *Bank of America* will receive a consumer's dispute sent through the CRAs other than through the e-Oscar system.

60. On information and belief, Ms. Louison alleges that to date *Bank of America* has never complained to the CRAs about the amount of information it receives regarding a consumer dispute through the e-Oscar system or through ACDVs.

61. If *Bank of America* receives a consumer dispute ACDV form, it is aware that it may also contact the CRA that sent it to obtain more information regarding a consumer's dispute.

62. Based on the manner in which the CRAs responded to the Ms. Louison's disputes, representing that *Bank of America* had "verified" the supposed accuracy of its reporting, Plaintiff alleges that *Experian*, *Equifax* and *Trans Union* did in fact forward the Plaintiff's dispute via an ACDV to *Bank of America*.

63. *Bank of America* understood the nature of the Plaintiff's dispute when it received the ACDVs from *Experian*, *Equifax* and *Trans Union*.

64. When *Bank of America* received the ACDVs from *Experian*, *Equifax*, and *Trans Union*, it as well could have reviewed its own system and previous communications with the Ms. Louison and discovered that she was current on her mortgage.

65. Notwithstanding the above, *Bank of America* follows a standard and systemically unlawful process when it receives the ACDV dispute. Basically, all *Bank of America* does is review its own internal computer screen for the account and repeat back to the ACDV system the same information *Bank of America* already had reported to the CRAs.

66. When *Bank of America* receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether or not the information already in its computer system is itself accurate.

67. As a result of *Bank of America's* violations of 15 U.S.C. §1681s-2(b)(1)(A), the Ms. Louison suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

68. The violations by *Bank of America* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Bank of America* was negligent, which entitles the Ms. Louison to recovery under 15 U.S.C. §1681o.

69. The law in this District, the Fourth Circuit and even nationally has long ago been set to require a detailed and searching investigation by a creditor when it receives a consumer's FCRA dispute through a CRA.

70. *Bank of America* was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

71. *Bank of America* has been sued numerous times for its alleged failures to conduct lawful FCRA investigations.

72. On information and belief, the Ms. Louison alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that *Bank of America* intended its employees or agents to follow.

73. On information and belief, the Plaintiff alleges that *Bank of America's* employee or agent did not make a mistake (in the way in which he or she followed *Bank of America's* procedures) when he or she received, processed and responded to the *Experian*, *Equifax*, and *Trans Union's* ACDVs.

74. On information and belief, the Plaintiff alleges that *Bank of America* has not materially changed its FCRA investigation procedures after learning of its failures in this case.

75. Ms. Louison is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Bank of America* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT SEVEN: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(B)
### (BANK OF AMERICA)

76. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint.

77. On one or more occasions within the past two years, by example only and without limitation, *Bank of America* violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer report agencies.

78. As Plaintiff detailed in Count Six, *Bank of America* has elected to use the e-Oscar system for its FCRA disputes received through the CRAs.

79. *Bank of America* is aware of the meaning of the several dispute codes used by the CRAs in e-Oscar.

80. *Bank of America* does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the CRAs.

81. *Bank of America* understood the Ms. Louison's disputes stated that she was current on her mortgage.

82. Nevertheless, *Bank of America* ignored such information and instead simply regurgitated the same identifying information it had previously reported to the CRAs.

83. As a result of *Bank of America's* violations of 15 U.S.C. §1681s-2(b)(1)(B), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

84. The violations by *Bank of America* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Bank of America* was negligent, which entitles the Plaintiff to recovery under 15 U.S.C. §1681o.

85. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from *Bank of America* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

### COUNT EIGHT: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
### (BANK OF AMERICA)

86. Ms. Louison realleges and incorporates all other factual allegations set forth in the Complaint (particularly though not limited to as pled in the "Fact" section of the Complaint and the previous two Counts).

87. On one or more occasions within the past two years, by example only and without limitation, *Bank of America* violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing the *Bank of America* representations within Plaintiff's credit files with *Experian, Trans Union*, and *Equifax* without also including a notation that this debt was

disputed pursuant to a settlement agreement and by failing to correctly report results of an accurate investigation to each credit reporting agency.

88. Specifically, *Bank of America* failed to add the "XB" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to *Experian*, *Equifax*, and *Trans Union*.

89. On information and belief, Plaintiff alleges that *Bank of America* rarely if ever adds the XB code or other notation that an account is disputed when it responds to e-Oscar ACDVs.

90. *Bank of America* knew that the Plaintiff disputed the subject account because she had previously disputed the debt directly to *Bank of America*.

91. The Plaintiff's dispute was, at a minimum, bone fide.

92. In fact, the Plaintiff's dispute was correct because she had paid her mortgage from November 2012 through February 2012, when *Bank of America* began returning her payments and attempting to foreclose on her home.

93. *Bank of America* was aware of the *Saunders v. B.B. & T.* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding the Plaintiff's dispute.

94. *Bank of America* has been sued multiple times for its alleged failures to note its account as disputed when responding to a FCRA dispute.

95. On information and belief, the Plaintiff alleges that the procedures followed regarding the Plaintiff's FCRA disputes through e-Oscar were the procedures that *Bank of America* intended its employees or agents to follow.

96. On information and belief, the Plaintiff alleges that *Bank of America's* employee or agent did not make a mistake (in the way in which he or she followed *Bank of America's* procedures) when he or she received, processed and responded to the *Experian, Equifax,* and *Trans Union's* ACDVs and did not include the XB code in the CCC field.

97. On information and belief, the Plaintiff alleges that *Bank of America* has not materially changed its FCRA investigation procedures regarding the CCC field in ACDVs after learning of its failures in this case.

98. As a result of *Bank of America's* violations of 15 U.S.C. §1681s-2(b)(1)(C) and (D), the Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

99. The violations by *Bank of America* were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, *Bank of America* was negligent, which entitles the Ms. Louison to recovery under 15 U.S.C. §1681o.

100. Ms. Louison entitled to recover actual damages, statutory damages, costs and attorney's fees from *Bank of America* in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and §1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for prejudgment and post-judgment interest at the judgment rate, and such other relief the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**

                                        Respectfully Submitted,
                                        LISA LOUISON

                                        By_____
                                                Counsel

Leonard A. Bennett, VSB#37523
Susan M. Rotkis, VSB#40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
*Counsel for Plaintiff*


Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
SUROVELL, ISAACS, PETERSEN & LEVY, PLC
4010 University Drive, Second Floor
Fairfax, Virginia 22030
(703) 251-5400 – Telephone
(703) 591-9285 – Facsimile
Email: kkelly@siplfirm.com
Email: aguzzo@siplfirm.com